# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 143

OCTOBER TERM, A.D. 2013

_November 19, 2013_

SHIRLEY WEIDT,

**Appellee**
**(Defendant),**

**v.**

S-13-0053

THE STATE OF WYOMING,

**Appellant**
**(Plaintiff).**

---

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
>      Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel.  Argument by Mr. Alden.

*Representing Appellee:*
>      Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey Pope, Assistant Attorney General; Brian J. Fuller, Student Intern.  Argument by Mr. Fuller.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]     Appellant Shirley Weidt was found guilty of indirect criminal contempt for failure to comply with an injunction and a *nunc pro tunc* amendment that allowed Sheridan County to enter her property and remove vehicles and trailers which violated county zoning ordinances.  We find the evidence insufficient to support the conviction as a matter of law, and we therefore reverse and remand with directions to vacate.

## ISSUES

[¶2]     The Appellant identified numerous issues, but as we explain below, we will address only one of them because it is dispositive:

> Did the State present sufficient evidence to prove criminal contempt beyond a reasonable doubt?

## FACTS

[¶3]     Shirley Weidt owns and resides on 40.76 acres just outside the unincorporated town of Banner in Sheridan County.[1]  Her property is zoned for agricultural and residential use.  Ms. Weidt has kept a number of inoperable automobiles and trailers that Sheridan County believes violate its zoning ordinances on the property for many years, and this has resulted in a bitter decades-old dispute.  The County eventually filed a civil action seeking abatement of the claimed violation of its zoning ordinances and a public nuisance.  It sought a mandatory injunction requiring Ms. Weidt to remove the offending vehicles and trailers, with an order authorizing the County to remove them at Ms. Weidt's expense if she failed to do so.

[¶4]     Ms. Weidt represented herself in the abatement proceedings. After a bench trial, the district court entered "Findings of Fact and Conclusions of Law" on May 17, 2012.  It found that Ms. Weidt had at least thirty-six different automobiles, mobile homes, recreational vehicles, and trailers in various states of disrepair on the property.  Many of the trailers were being used as chicken coops and goat houses, and almost all of the vehicles were inoperable.  Three of the mobile homes were also owned by other individuals.

[¶5]     The court held that many of these activities were not agricultural or residential, and that the use of the property exceeded applicable zoning density regulations.  There

---

[1] Weidt acquired the property in her individual name in 1983.  In 1995 she transferred the property to the Sunny Rock Trust.  The trial court found that the instrument creating the trust gave Weidt the authority to use and control the property.

1

was no evidence of prior non-conforming use, *i.e.*, a use preceding the adoption of the county zoning regulations.

[¶6]    The court granted an injunction and zoning abatement order which required Ms. Weidt to remove: (1) all automobiles except for two which were operable; (2) all mobile homes except Ms. Weidt's residence; (3) all recreational vehicles not used for that purpose; and (4) all trailers that were not roadworthy. The order provided that Ms. Weidt "shall have sixty (60) days from the date of this order to remove the above mentioned items. At the conclusion of that period, if the items have not been removed, the Plaintiff is authorized to enter the property and remove the items at the Defendant's sole cost and expense."

[¶7]    An order *nunc pro tunc* containing the following language was entered on September 11, 2012:

> Page 6, Paragraph 11 [of the previous order] shall be amended to include the following:
>
> 11. The Defendant shall have sixty (60) days from the date of this order to remove the above mentioned items. At the conclusion of that period of time if the items have not been removed, the Plaintiff is authorized to enter the property and remove the items at the Defendant's sole cost and expense. **The Plaintiff obtains legal ownership of any items that it removes from the Property and shall dispose of the items in its discretion, with any profits resulting from the removal and disposal of the items above the costs of removal and disposal to be paid to the Defendant.**

(emphasis in original).

[¶8]    The drafter of the order utilized the common convention used by attorneys to identify changes from the original order when he bolded the language which had been added. As all lawyers know, the term *nunc pro tunc* means "now for then" in Latin, meaning that the order was intended to be retroactive to the date of the original injunction. Black's Law Dictionary 1174 (9th ed. 2009).

[¶9]    A special deputy county and prosecuting attorney filed a "Contempt Petition and Application for Order to Show Cause" on September 28, 2012. It alleged that two county zoning compliance officers and a deputy sheriff went to Ms. Weidt's property on September 24 to begin removing property violating the zoning regulations. It further stated that Ms. Weidt "met the Officers at the gate to the Property, but refused the Officer's requests to allow the Officers to enter the Property, thereby preventing the

Officers from entering the Property." The petition claimed that Appellant was therefore guilty of indirect criminal contempt as described in W.R.Cr.P. 42.[2]

---

[2] Rule 42 provides in pertinent part as follows:

> (a) *Types*. – Criminal contempts of court are of two kinds, direct and indirect.
>
> .  .  .
>
> > (2) Indirect (Constructive). – Indirect (constructive) contempts are those not committed in the immediate presence of the court, and of which it has no personal knowledge, including but not limited to the following acts or omissions:
> >
> > .  .  .
> >
> > > (C) Disobedience of any lawful judgment, order, or process of the court;
> >
> > .  .  .
>
> (c) *Indirect (constructive) contempt proceedings*. – A criminal contempt, except as provided in subdivision (b) concerning direct contempt, shall be prosecuted in the following manner:
>
> > (1) Order to Show Cause. – On the court's motion or upon affidavit of any person having knowledge of the facts, a judge may issue and sign an order directed to the accused, stating the essential facts constituting the criminal contempt charged and requiring the accused to appear before the court and show cause why the accused ought not be held in contempt of court. The order shall specify the time and place of the hearing, with a reasonable time allowed for preparation of a defense.
> >
> > .  .  .
> >
> > (4) Arraignment; Hearing. – The accused shall be arraigned at the time of the hearing, or prior thereto upon the request of the accused. A hearing to determine the guilt or innocence of the accused may follow a plea of not guilty or may be set for trial at a later date or time. The judge may conduct a hearing without assistance of counsel or may be assisted by the attorney for the state or by an attorney appointed by the court for that purpose. The accused is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and may testify in his own defense. Unless

3

[¶10] The district court issued an order to show cause requiring Ms. Weidt to appear, which she did. The district judge read the State's allegations to Ms. Weidt and advised her of her rights. Although he had appointed the public defender's office to represent Ms. Weidt, the order had evidently not reached that office and so no attorney appeared on her behalf. The court therefore entered a not guilty plea.

[¶11] At a later status conference, the special deputy county attorney handling the case indicated that a jury trial would be unnecessary because he would not seek a sentence beyond six months of incarceration. *See* W.R.Cr.P. 42(e) (jury trial required for sentence in excess of six months on criminal contempt charge). The court set the matter for a bench trial.

[¶12] At the trial, Sheridan County code enforcement officer Robert Shelley testified that he had been involved with several actions against Ms. Weidt, including the civil zoning action in 2011 and 2012. He went out to the property in late July of 2012. The 60-day period for Ms. Weidt to abate the zoning violations had expired, but she had not removed any of the items specified in the order. He contacted a salvage company that agreed to remove the vehicles, and then contacted several demolition contractors that were interested in bidding on the trailers.

[¶13] Officer Shelley visited Ms. Weidt's property again on September 24. He was accompanied by another code enforcement officer and a deputy sheriff. As the record reflects that they were not accompanied by anyone with equipment capable of removing the vehicles and trailers, we infer that they intended to survey the property to determine

---

the charged contempt is tried to a jury as provided in subdivision (e), all issues of law and fact shall be heard and determined by the judge.

. . .

(6) Verdict; Judgment. – At the conclusion of the hearing the judge shall sign and enter of record a judgment of guilty or not guilty. In addition to the requirements of Rule 32, a judgment of guilt for contempt of court shall include a recital of the facts constituting the contempt.

(7) Sentence. – Unless an accused may be sentenced to the penitentiary, a presentence investigation is not required but may be ordered. In other respects, Rule 32 shall apply to sentencing for contempt.

W.R.Cr.P. 42.

4

what would have to be done to remove them. The record likewise does not reflect that Ms. Weidt was given any advance notice that they were coming.

[¶14] They arrived at about 10:15 a.m. and parked in the driveway outside a closed gate. Ms. Weidt met them at the gate, which was the main entry to the property. Officer Shelley told her that they were there to start moving the vehicles, and asked her if she would allow them on the property. She responded that "[s]he was not going to open the gate," which the parties agree was unlocked at the time. Officer Shelley also testified that "she had a handful of papers [evidently referring to the civil zoning orders] and she was insisting that she had 60 days again." He asked her what would happen if he opened the gate, and she responded, "What do you think? You'd be trespassing." She also stated that she wanted to be paid for any cars that were removed, but Shelley told her that wasn't going to happen.

[¶15] Ms. Weidt was drinking a can of "Bruce" beer at the time of the encounter. Shelley was concerned about her alcohol consumption based on his experience in law enforcement. He understood that the original court order gave him the right to enter the property, but he testified that he and the other code enforcement officer didn't open the gate because "we didn't want anybody to get hurt and I didn't specifically want her to go to jail or anything at the time and this was just the civil way to do it."

[¶16] Cross-examination established that Ms. Weidt told the officers that the *nunc pro tunc* order gave her another sixty days to comply with the abatement order. Officer Shelley tried to explain that the *nunc pro tunc* order did not give her any additional time, but he admitted that she was obviously confused by it. Ms. Weidt continued to refuse to open the gate, although she did not specifically say that the officers couldn't enter the property or threaten to interfere with them in any way if they did. However, Officer Shelley understood her statement to mean that she was refusing them access.

[¶17] Sheridan County deputy sheriff Brian McPhillips accompanied Officer Shelley to the property on September 24. He testified that in his opinion Ms. Weidt did not comply with Officer Shelley's requests to enter the property, although he was not asked to testify to the specific facts of the encounter. He indicated that Ms. Weidt expressed her belief that the *nunc pro tunc* order gave her another sixty days to remove the offending personal property. He acknowledged on cross-examination that the gate was unlocked and that they had a court order to enter the property. He admitted that any of the officers could have simply opened the gate to enter the property.

[¶18] Based on this evidence, the district court found Ms. Weidt guilty of indirect criminal contempt:

> [I]n the civil matter the Court issued an order allowing the
> County to enter the property; that she failed to remove the

5

property that was identified to be removed. . . . [R]epresentatives of the County appeared, and the nature of the -- maybe confrontation is too strong a word, but the exchange between the parties, despite the argument that -- and she didn't articulate with absolute specificity that: "You cannot come on the property." Her body language, the comments made, the posturing was such that it was clear that she was preventing them from avoiding [sic] or entering the property.

> The officers did the right thing; they avoided the confrontation, particularly if alcohol was observed, which it was observed. They let it calm down and they came back to the Court, rather than ending up in some confrontation or tragedy, and showed the proper restraint. The Court finds that she is guilty.

[¶19]  The court sentenced Ms. Weidt to six months in the county jail, but suspended the sentence in favor of six months of unsupervised probation. The terms of her probation required that she grant county agents access to her property, cooperate with the county's cleanup efforts, and not violate any state, federal, or local laws. She was also fined $750. A written judgment and sentence reflecting this oral ruling was entered on January 11, 2013. This appeal was timely perfected.

## STANDARD OF REVIEW

[¶20]  Criminal contempt is the only common-law crime not abolished by statute. Wyo. Stat. Ann. § 6-1-102(a) (LexisNexis 2013). It "is a crime in every fundamental respect." *In re BD*, 2010 WY 18, ¶ 4, 226 P.3d 272, 273 (Wyo. 2010) (quoting *Swain v. State*, 2009 WY 142, ¶ 13, 220 P.3d 504, 508 (Wyo. 2009)). The State therefore carries the burden of proving every element of a charge of criminal contempt beyond a reasonable doubt. *In Interest of EWR*, 902 P.2d 696, 700 (Wyo. 1995) (citing *Witt v. State*, 892 P.2d 132, 143 (Wyo. 1995)); *see also Michaelson v. United States ex rel. Chic., St. P., M. & O. Ry. Co.*, 266 U.S. 42, 66, 45 S. Ct. 18, 20, 69 L. Ed. 162 (1924). Our standard of review of the sufficiency of evidence in criminal cases is well-established:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury [or fact-finder]; rather, we determine whether a jury [or fact-finder] could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard

6

applies whether the supporting evidence is direct or circumstantial.

*Sweets v. State*, 2013 WY 98, ¶ 14, 307 P.3d 860, 865 (Wyo. 2013) (quoting *Craft v. State*, 2013 WY 41, ¶ 18, 298 P.3d 825, 830–31 (Wyo. 2013)).

[¶21]  This appeal also requires us to interpret a rule of criminal procedure and determine the effect of a *nunc pro tunc* order.  These are questions of law that we review de novo. *Kelly v. Kilts*, 2010 WY 151, ¶ 9, 243 P.3d 947, 950 (Wyo. 2010) (citing *Busch v. Horton Automatics, Inc.*, 2008 WY 140, ¶ 13, 196 P.3d 787, 790 (Wyo. 2008)); *In re Kite Ranch, LLC v. Powell Family of Yakima*, LLC, 2008 WY 39, ¶ 17, 181 P.3d 920, 925 (Wyo. 2008).

## DISCUSSION

[¶22]  Ms. Weidt claims that "the matter should not have been considered or punished as a criminal contempt" because the proceedings were intended to coerce her into complying with a civil zoning order. She also argues that the earlier order was not in effect, having been supplanted by the *nunc pro tunc* order, and that it was therefore "impossible to be in contempt for not obeying [the earlier order]." She claims that both of the orders were ambiguous as to her responsibilities, and that the evidence of willfulness was insufficient to demonstrate criminal contempt. Finally, she claims that the May 17, 2012 order did not give the county officials self-executing authority to enter the property, but that they instead had to apply for another order.

[¶23]  The State responds that the district court's choice of criminal sanctions was reasonable, and that the action was properly instituted. It claims that the *nunc pro tunc* order did not extend Ms. Weidt's time to comply with the zoning order, because it only modified the previous order's language regarding disposition of the vehicles and trailers. The State further contends that the civil orders clearly allowed the county to enter the property if Ms. Weidt did not abate the zoning violations, and that the evidence clearly demonstrated her disobedience of a court order. The State also argues that criminal contempt for disobedience of a court order does not require any showing of willfulness.

[¶24]  We resolve this case on the sufficiency of the evidence.  Ms. Weidt was convicted of criminal contempt[3] for disobedience of an injunction and abatement order.  Rule 65(d)

---

[3] Historically, contempt of court meant contempt of a *royal* court at common law, and "the contempt power was employed by the courts of early England as a means of punishing a presumed contempt or disrespect of the king's authority."  Edward Gregory Mascolo, *Procedures and Incarceration for Civil Contempt: A Clash of Wills Between Judge and Contemnor*, 16 New Eng. J. on Crim. & Civ. Confinement 171, 174 (1990); *see also State v. Roll*, 298 A.2d 867, 875 (Md. 1973) (explaining the historical foundation of judicial contempt powers), *abrogated on other grounds by Robinson v. State*, 308 A.2d 712 (Md. Ct. App. 1973). The modern concept of contempt encompasses "a clear and open willful

of the Wyoming Rules of Civil Procedure requires injunctions to be "specific in terms," and to "describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." W.R.C.P. 65(d). Rule 65(d), just like its federal counterpart, is intended to "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Bard Ranch Co. v. Weber*, 557 P.2d 722, 733 (Wyo. 1976) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 715, 38 L. Ed. 2d 661 (1974)); *see also Greene v. Finn*, 2007 WY 47, ¶ 14, 153 P.3d 945, 951 (Wyo. 2007) ("[A]mbiguities in court orders redound to the benefit of the person charged with contempt." (quoting *Bard Ranch*, 557 P.2d at 733)).

[¶25] We have also recognized that "criminal contempt necessarily implies an element of intent that must be proved before a contempt citation can be upheld." *EWR*, 902 P.2d at 700 (quoting *Horn v. Dist. Ct., Ninth Judicial Dist.*, 647 P.2d 1368, 1375 (Wyo. 1982)). Rule 42 simply defines the relevant form of indirect criminal contempt as "[**d]isobedience** of any lawful judgment, order, or process of the court." W.R.Cr.P. 42(a)(2)(C) (emphasis added). *Accord* 18 U.S.C. § 401(3) (2013) (federal courts may punish by fine or imprisonment contempt consisting of "[d]isobedience or resistance to [a federal court's] lawful writ, process, order, rule, decree, or command"). The rule is procedural in nature, and does not purport to define the elements of criminal contempt.

[¶26] "Disobedience," however, means a refusal or failure to obey. *See French v. Pobst*, 127 S.E.2d 137, 142 (Va. 1962) ("Disobedience to a decree occurs on failure or refusal to obey its command or its prohibition."); Webster's Third New International Dictionary 562 (2002). Judge Cardozo once quipped that "[d]isobedience is impossible unless there is something to be obeyed." *Standard Chems. & Metals Corp. v. Waugh Chem. Corp.*, 131 N.E. 566, 567 (N.Y. 1921).

[¶27] Federal courts have therefore rejected findings of contempt when it was impossible to comply with the terms of an order, or when an order contained no legal commands. *See, e.g.*, *Turner v. Rogers*, 131 S. Ct. 2507, 2516, 180 L. Ed. 2d 452 (2011); *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S. Ct. 201, 208, 19 L. Ed. 2d 236 (1967); *Hughey v. JMS Dev. Corp.*, 78 F.3d

---

disregard for the authority of the court," or "any act calculated to embarrass, hinder, or obstruct the court in the administration of justice." 7A Fed. Proc., L. Ed. § 17:1 (2013); *see also* W.R.Cr.P 42 (criminal contempt proceedings); W.R.Cr.P. 42.1 (civil contempt proceedings). Chief Justice Earl Warren once observed how "the right of courts to conduct their business in an untrammeled way lies at the foundation of our system of government." *Wood v. Georgia*, 370 U.S. 375, 383, 82 S. Ct. 1364, 1369, 8 L. Ed. 2d 569 (1962). A courts' power to punish for contempt is therefore "a means of assuring the enforcement of justice according to law." *Sacher v. United States*, 343 U.S. 1, 24, 72 S. Ct. 451, 462, 96 L. Ed. 717 (1952) (Frankfurter, J., dissenting); *see also In re Contempt of Haselhuhn*, 740 P.2d 387, 390 (Wyo. 1987) ("It is undisputed that a court's power to punish for contempt is a necessary and integral part of the independence of the judiciary.") (citing *Anderson v. Anderson*, 667 P.2d 660, 664 (Wyo. 1983)).

1523, 1531–32 (11th Cir. 1996); *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980). Mistake, inadvertence, or neglect are likewise not "disobedience" in the context of criminal contempt. *United States v. Straub*, 508 F.3d 1003, 1012 (11th Cir. 2007); *Hubbard v. Fleet Mortg. Co.*, 810 F.2d 778, 781 (8th Cir. 1987); *Vaughn v. City of Flint*, 752 F.2d 1160, 1169 (6th Cir. 1985); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir. 1983); *Cont'l Ins. Companies v. Bayless & Roberts, Inc.*, 548 P.2d 398, 407 (Alaska 1976); *State v. Brown*, 776 P.2d 1182, 1186 (Haw. 1989).

[¶28] Most of the federal circuits require proof of a willful violation of a reasonably specific order to establish criminal contempt for disobedience of a court order.[4] We believe the majority federal rule is the correct approach. It also provides much-needed clarification in an area of the law that has "bedeviled" courts, judges, lawyers, and legal commentators. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 n.3, 114 S. Ct. 2552, 2557, 129 L. Ed. 2d 642 (1994) (citing Martineau, *Contempt of Court: Eliminating the Confusion between Civil and Criminal Contempt*, 50 U. Cin. L. Rev. 677 (1981)). We conclude that indirect criminal contempt for disobedience of a court order requires the State to prove three elements beyond a reasonable doubt: (1) a reasonably specific order; (2) violation of the terms of the order; and (3) willful intent to violate the order. *See Hipp*, 5 F.3d at 112.

[¶29] The May 17, 2012 order enjoined several zoning violations, and stated that Ms. Weidt had sixty days to abate those violations. After sixty days had expired, the county was authorized to enter the property and remove the zoning violations. This language was sufficiently clear to apprise Ms. Weidt of her obligations to allow county agents access to her property, and it also made clear she could not interfere with them. However, it did not order her to open gates or to perform any other specific act to facilitate the County's work on the property.

---

[4] *United States v. Linney*, 134 F.3d 274, 278 (4th Cir. 1998); *United States v. Young*, 107 F.3d 903, 907 (D.C. Cir. 1997); *Doe v. Maywood Hous. Auth.*, 71 F.3d 1294, 1297 (7th Cir. 1995); *Downey v. Clauder*, 30 F.3d 681, 686 (6th Cir. 1994); *Hazen v. Reagen*, 16 F.3d 921, 924 (8th Cir. 1994); *In the Matter of Hipp, Inc.*, 5 F.3d 109, 112 (5th Cir. 1993); *S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 439 (2d Cir. 1987); *United States v. Turner*, 812 F.2d 1552, 1563 (11th Cir. 1987); *United States v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986). *Accord Ex parte Ferguson*, 819 So. 2d 626, 629 (Ala. 2001); *In re Marriage of Nussbeck*, 974 P.2d 493, 497, 499 (Colo. 1999); *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995); *see also Wilson v. State*, 169 U.S. 586, 600, 18 S. Ct. 435, 441, 42 L. Ed. 865 (1898) (no evidence of intentional misconduct in a criminal contempt proceeding); 7A Fed. Proc., L. Ed. § 17:19 (2013) ("[O]rdinarily the requisite mental state for indirect criminal contempt is willfulness [unless] the alleged contempt consists of the violation of a statute or rule which specifically supplies the culpable mental state . . . ."); 3A F Charles Alan Wright & Sarah N. Welling, Federal Practice & Procedure § 702 (4th ed. 2010) (citations omitted) ("[C]ontempt of court is a willful disregard of the authority of the court."). *But see Seven Rivers Farm, Inc. v. Reynolds*, 508 P.2d 1276, 1279 (N.M. 1973) ("[I]ntent is not an essential element of contempt."); *In re Jasper*, 106 Cal. Rptr. 754, 755 (Cal. Ct. App. 1973) ("Ordinarily, a specific wrongful intent is not an essential element in contempt proceedings.").

[¶30] The *nunc pro tunc* order muddied the waters. It stated that Ms. Weidt had sixty days to remove the zoning violations from her property. It did not clearly specify whether that period ran from the date of the original order (May 17, 2012) or the *nunc pro tunc* order (September 11, 2012). The *nunc pro tunc* order did include additional bolded language that allowed the county to salvage the vehicles and trailers to recoup its disposal costs. Nothing in the record suggests that Ms. Weidt was proficient in the dead language of Latin, that she owned a copy of Black's Law Dictionary, or that she was aware that *nunc pro tunc* "is a fancy phrase for backdating." *See Sierra Club v. Whitman*, 285 F.3d 63, 67 (D.C. Cir. 2002).

[¶31] It is undisputed that Ms. Weidt told the law enforcement officers on September 24 that she had another sixty days from the date of the *nunc pro tunc* order. Officer Shelley also testified that Ms. Weidt was "obviously confused" about the orders. An attorney would probably have understood that the bolded text was the only change to the original order, and that Ms. Weidt's other obligations remained in place. Or perhaps not, since counsel for the parties to this appeal do not agree on the meaning of the *nunc pro tunc* order and present reasonable arguments for the construction they each favor.

[¶32] There is no indication that Ms. Weidt was aware of the convention of bolding changes in amended court documents. If she had read the Wyoming Rules of Civil Procedure, she would have found nothing which explained that the only change in the order was the bolded language. Clarity could have been achieved by simply putting the added language in a new paragraph and not repeating the paragraph that referred to the sixty days originally allowing her to remove the offending property.

[¶33] Even viewing the State's evidence as true and giving it all favorable inferences, the original order as read with the *nunc pro tunc* order were too vague to support a conviction of criminal contempt. They are confusing, and there is no doubt that Ms. Weidt in fact misunderstood the effect of the bolded language. *Cf. In re Contempt of Haselhuhn*, 740 P.2d 387, 390 (Wyo. 1987) (court required to explain effect of an unrepresented witness's refusal to be sworn in before holding him in contempt). To be punishable by criminal contempt, an order should provide clear and specific direction as to what must or must not be done, and Latin phrases should be avoided. *Cf.* 1 F.R.D. 141, 142 (1940) (jury instructions should avoid the use of technical Latin terms because few laymen "are familiar with legal language."). The question is not whether attorneys or judges might agree to the meaning of an order after careful study of its language and legal principles governing its construction. It is whether an order is sufficiently clear that a violation of its terms should be a crime.

[¶34] As to the final element listed above, willfulness consists of a "deliberate or intended violation," or a "volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *Armstrong*, 781 F.2d at 706; *see also, e.g., Rojas v. United States*, 55 F.3d 61, 63 (2d Cir. 1995) (quoting *United States v. Greyhound Corp.*,

508 F.2d 529, 531–32 (7th Cir. 1974)); *Dean v. State*, 668 P.2d 639, 642 (Wyo. 1983) (quoting *Matter of Adoption of CCT and CDT*, 640 P.2d 73, 76 (Wyo. 1982)). A contemnor's state of mind cannot usually be proven directly, and must instead be ascertained from all the acts, words, and circumstances surrounding the events. *In re Vance*, 697 A.2d 42, 44–45 (D.C. 1997); *People v. Simac*, 641 N.E.2d 416, 421 (Ill. 1994); *State v. Bowers*, 241 S.E.2d 409, 413 (S.C. 1978).

[¶35] Ms. Weidt never indicated that she would prevent the county agents from entering the property or interfere with them if they did. She simply said "I'm not opening the gate," and indicated her belief that they would be trespassing based upon her understanding of the *nunc pro tunc* order. The officers never asked her intentions if they opened the unlocked gate and entered. We commend them for their restraint in withdrawing and seeking direction on how to deal with an ambiguous order and a disgruntled property owner who was under the influence of alcohol to some extent. We can also appreciate the County's frustration with a landowner it believed had flouted its zoning regulations for decades, and whom it probably reasonably concluded had no intention of doing anything in the sixty additional days she thought she had to abate.

[¶36] Nonetheless, Ms. Weidt's actions and words were insufficient to constitute deliberate or intended disobedience of the district court's orders. At most, she was uncooperative and confused about her obligations under the *nunc pro tunc* order. In the words of Justice Oliver Wendell Holmes, contemptuous misbehavior "means something more than adverse comment or disrespect." *Toledo Newspaper Co. v. United States*, 247 U.S. 402, 423, 38 S. Ct. 560, 565, 62 L. Ed. 1186 (1918) (Holmes, J. dissenting), *overruled in part by Nye v. United States*, 313 U.S. 33, 61 S. Ct. 810, 88 L. Ed. 1172 (1941).

[¶37] We therefore reverse Appellant's conviction for indirect criminal contempt, and find it unnecessary to address the remaining issues in this case.[5]

## CONCLUSION

[¶38] The evidence was insufficient as a matter of law to prove willful disobedience of a reasonably specific court order beyond a reasonable doubt. We therefore reverse Ms. Weidt's conviction for indirect criminal contempt, and remand this matter to the district court with directions to vacate its judgment and sentence.

---

[5] Since the evidence was insufficient to support the conviction, it is unnecessary to address the argument as to whether civil or criminal sanctions were appropriate in this case. *See Ken v. State*, 2011 WY 167, ¶ 17, 267 P.3d 567, 572 (Wyo. 2011) ("The Double Jeopardy Clause precludes a second trial once a reviewing court has found the evidence presented in the first trial legally insufficient to support the conviction."). A recent two-part article in the *Wyoming Lawyer* contains an excellent synopsis of the distinctions between civil and criminal contempt. *See generally* Tori R.A. Kricken, *Contempt of Court--A Practical Guide for Lawyers and Judges*, 34 Wyo. Law. 46 (Oct. 2011), 34 Wyo. Law. 40 (Dec. 2011).