**Kerm KATH, Gerald W. Rounsborg and Donald Jones, Appellants (Defendants),**

v.

**WESTERN MEDIA, INC., Tony A. Kehl and Leonard Kehl, Appellees (Plaintiffs).**

No. 83–224.

Supreme Court of Wyoming.

July 19, 1984.

Stanley K. Hathaway and Rick A. Thompson of Hathaway, Speight & Kunz, Cheyenne, for appellants.

John R. Hursh and William L. Miller of Central Wyoming Law Associates, P.C., Riverton, for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellants Kath, Rounsborg and Jones appeal from the trial court's order confirming a settlement of a lawsuit negotiated by the parties. Appellees' Wyoming attorney had in his possession a letter written by appellees' Montana attorney which contradicted testimony given by the Montana attorney at his deposition. The single issue is whether there was a duty to apprise appellants of this letter before a settlement was reached.

We will reverse and remand for trial.

Kerm G. Kath, Gerald A. Rounsborg, Donald E. Jones, Tony Kehl and Leonard Kehl were associated together for the purpose of acquiring and operating radio stations in Wyoming, Nebraska and Montana.[1] This group was closely associated first as partners in acquiring stations and forming corporations and later as shareholders in the corporations. The five members of the group, along with Western Media, Inc., were sued in Montana, both as shareholders in the corporation and individually. In the Montana litigation Mr. J. Robert Planalp represented Western Media, Inc., and the five shareholders for all purposes. The case was decided adversely to the five individuals and Western Media, Inc. The defendants in the Montana lawsuit are either appellants or appellees in this action. Appellees brought this action in Wyoming against appellants to recover damages,

---

1. Apparently Leonard Kehl joined the group later than the others, and was only involved with the Montana radio station. Kerm G. Kath died after the commencement of this action, and his estate was substituted as a party defendant.

court costs and attorney fees incurred in the Montana litigation.

After commencement of this action the parties had several settlement discussions. Appellants offered to settle the Wyoming lawsuit for $12,000, which sum represented about three-fifths of the attorney fees in the Montana suit. Appellees made counter offers but they were not acceptable to appellants. Appellants had some concern whether or not Planalp had represented all the defendants in the Montana litigation equally, that is, whether or not he had favored Western Media, Inc., and the Kehl brothers to the disadvantage of Kath, Rounsborg and Jones.

At a pretrial conference Planalp was listed by appellees as a witness. Appellants requested that the deposition of Planalp be taken and that he produce his Montana litigation file for examination. The deposition was taken April 6, 1983, and it was stipulated that the deposition be used as evidence at trial. Planalp produced his file for the first time at the deposition. Planalp testified in his deposition that he represented both appellants and appellees in the Montana lawsuit. He further testified that he represented all appellants and appellees, up to and including the time a decision was made to dismiss the appeal before the Montana Supreme Court. Planalp testified that at the time the appeal was dismissed in October, 1980, he believed the matter was settled; he did not learn that the Kehl brothers intended to collect the attorney fees, damages and court costs from Kath, Jones and Rounsborg until late 1981, which was after the Montana judgment was paid. Planalp's entire deposition testimony was to the effect that he had not represented some of his clients to the disadvantage of others.

Stipulation for satisfaction of judgment was signed by Planalp in October, 1980. The Montana judgment against Kath, Rounsborg and Jones was assigned to Western Media, Inc., in December, 1980. Planalp was involved in this assignment, but did not tell appellants about it. Before this time the Kehl brothers had acquired all the stock in Western Media, Inc. Mr. Planalp stated in his deposition that had he known Western Media, Inc., and the Kehl brothers were going to sue appellants he would have had a duty to tell them about the assignment.

The day after Planalp's deposition, April 6, 1983, appellees' Wyoming attorney became concerned about an ethical problem and wrote Planalp the following letter:

"Upon our return to Riverton last night, I located the enclosed letter of yours dated June 23, 1980, which was addressed to Leonard Kehl. I think it is imperative that I have your comments concerning the contents of this letter as it relates to the position taken in your deposition yesterday. The inconsistency between your testimony and the content of this letter is most apparent and, quite frankly, I need to know your thoughts about this problem.

"I don't think Attorney Hathaway has a copy of this letter, but we know it exists. I would appreciate your thoughts on the ethical problems posed by the position you took in your deposition."

The letter referred to was addressed to Leonard Kehl, and shows a copy to Tony Kehl:

"You [Leonard Kehl] have asked me to review the potential liability of Defendants, Jones, Rounsborg and Kath. You have indicated to me that any potential liability would not want to be brought into Court except as a very last resort. I know Tony concurs with this position, but I think it is wise that you review your status concerning the liability of these shareholders.

"I will also, at the time the actual judgment is rendered, review the judgment to make sure that if at all possible, the judgment is not stating that you and Tony are in default but that the other three individuals are in default. This is important because the proposed judgment then would state that you have done nothing wrong, but that the other three individuals did something wrong.

"This concept of liability would then be important if and when you proceed against these Defendants."

On April 11, 1983, Planalp and appellees' Wyoming attorney talked about the June 23, 1980, letter. Planalp said he wanted to review his file and his deposition.[2] On the same day, appellees' Wyoming attorney called appellants' attorney and asked if the $12,000 was still available to settle the lawsuit. After several telephone conversations among the attorneys for the parties the case was orally settled, appellants agreeing to pay $12,000. At the time of the oral agreement to settle, neither appellants nor their attorney knew of Planalp's letter. A copy of such letter was not in Planalp's file at the time of the deposition when the file was examined by appellants. Appellants maintain that they settled the case based upon Planalp's deposition regarding his equal representation of the parties in the Montana litigation.

On April 11, 1983, Planalp sent appellants' attorney a copy of the June 23, 1980, letter. Upon receipt of the letter some days later, appellants' attorney revoked the offer of settlement. The revocation was based on "misleading and false statements made by Planalp in his deposition, and plaintiffs' (appellees) failure to disclose the contents of the June 23, 1980, letter to Defendants (appellants)."

After appellants revoked the settlement, appellees made a motion for an order confirming settlement; the trial court upheld the settlement and granted judgment in the sum of $12,000 in favor of appellees. This appeal is from the trial court's judgment.

The sole issue in this case is whether appellees' attorney had an ethical duty to advise the court and appellants' attorney of the June 23, 1980, letter from Planalp to Leonard Kehl. We hold that he had such a duty.

The court in *Virzi v. Grand Trunk Warehouse and Cold Storage Co.*, 571 F.Supp. 507 (E.D.Mich.1983) dealt with a nondisclosure problem involving legal principles similar to the principles involved here. *Virzi* was a personal injury action submitted to a mediation panel. After plaintiff's attorney filed a mediation statement but before the mediation panel acted, plaintiff died unexpectedly from causes unrelated to the lawsuit. The mediation panel placed a value on plaintiff's claim. Several days later plaintiff's attorney learned of his client's death. A personal representative was appointed by the probate court to administer plaintiff's estate but no suggestion of death was made to the federal court where the personal injury action was pending, nor was the personal representative substituted as plaintiff.

A month after plaintiff's death, counsel for the parties in the personal injury action appeared before the trial court at a pretrial conference, and after negotiations entered into a settlement of the lawsuit for the amount of the mediation award. At no time, from the time plaintiff's attorney learned of plaintiff's death until the agreement to settle the case, did plaintiff's attorney notify defendant's attorney or the court of the death of plaintiff. After the settlement was agreed upon in court chambers and made a matter of record, plaintiff's attorney, for the first time, informed defendant's attorney that plaintiff had died.

After being informed that plaintiff was dead, defendant sought to have the settlement declared void contending that the sole reason for agreeing to the settlement amount was that plaintiff would have made an excellent witness in his own behalf if the case had gone to trial. The court set aside the settlement and reinstated the case for trial.

The court in *Virzi* stated at p. 512:
" * * * [C]andor and honesty necessarily require disclosure of such a significant fact as the death of one's client. Opposing counsel does not have to deal with his adversary as he would deal in the marketplace. Standards of ethics require

**2.** After the June 23, 1980, letter was brought to the attention of Planalp, he modified his deposi-

tion before signing it. We believe this modification to be immaterial.

greater honesty, greater candor, and greater disclosure, even though it might not be in the interest of the client or his estate.

"The handling of a lawsuit and its progress is not a game. There is an absolute duty of candor and fairness on the part of counsel to both the Court and opposing counsel. At the same time, counsel has a duty to zealously represent his client's interests. That zealous representation of interest, however, does not justify a withholding of essential information, such as the death of the client, when the settlement of the case is based largely upon the defense attorney's assessment of the impact the plaintiff would make upon a jury, because of his appearance at depositions. Plaintiff's attorney clearly had a duty to disclose the death of his client both to the Court and to opposing counsel prior to negotiating the final agreement."

Disciplinary Rule 7–102A of the American Bar Association Model Code of Professional Responsibility provides: [3]

"(A) In his representation of a client, a lawyer shall not:

\*　　\*　　\*　　\*　　\*　　\*

"(3) Conceal or knowingly fail to disclose that which he is required by law to reveal."

Ethical Consideration 7–27 provides:

"Because it interferes with the proper administration of justice, a lawyer should not suppress evidence that he or his client has a legal obligation to reveal or produce. \* \* \*"

Rule 3.3 of the Model Rules of Professional Conduct, adopted by the American Bar Association August 2, 1983, provides in pertinent part: [4]

"(a) A lawyer shall not knowingly:

\*　　\*　　\*　　\*　　\*　　\*

"(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client."

In commenting upon Rule 3.3, the drafters state:

" \* \* \* There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. \* \* \*"

Judge Rubin in his article entitled, "A Causerie on Lawyer's Ethics in Negotiations," 35 La.L.Rev. 577, 589–590 (1975), says:

"If he is a professional and not merely a hired \* \* \* hand, the lawyer is not free to do anything his client might do in the same circumstances. The corollary of that proposition does set a minimum standard: the lawyer must be at least as candid and honest as his client would be required to be. The agent of the client, that is, his attorney-at-law, must not perpetrate the kind of fraud or deception that would vitiate a bargain if practiced by his principal. Beyond that, the profession should embrace an affirmative ethical standard for attorneys' professional relationships with courts, other lawyers and the public: The lawyer must act honestly and in good faith. Another lawyer \* \* \* who deals with a lawyer should not need to exercise the same degree of caution that he would if trading for reputedly antique copper jugs in an oriental bazaar. It is inherent in the concept of an ethic, as a principle of good conduct, that it is morally binding on the conscience of the professional, and not merely a rule of the game adopted because other players observe (or fail to adopt) the same rule. Good conduct exacts more than mere convenience. \* \* \* " \* \* \* Candor is not inconsistent with striking a deal on terms favorable to the client, for it is known to all that, at least

---

**3.** The Wyoming Supreme Court has adopted the American Bar Association Model Code of Professional Responsibility relating to the practice of law in Wyoming, with exceptions not applicable here. Rule 20, Bar Association Organization and Government.

**4.** The Model Rules of Professional Conduct have not been adopted by the Supreme Court of Wyoming. However, they reflect the most recent thinking on the subject of legal ethics by the American Bar Association.

within limits, that is the purpose to be served. * * * The distinction between honesty and good faith need not be finely drawn here; all lawyers know that good faith requires conduct beyond simple honesty."

Planalp's letter to Leonard Kehl dated June 23, 1980, clearly indicates that he had taken sides between the appellees and appellants and that his representation was in the Kehl Brothers' interest and was against the interests of Kath, Rounsborg and Jones. The letter also indicates that a lawsuit by appellees against appellants was being considered as early as June 23, 1980. The letter was contrary to what Planalp said or necessarily implied in his April 6, 1983, deposition.

We hold that appellees' counsel owed a duty of candor and fairness to disclose to opposing counsel and the court Planalp's letter of June 23, 1980. The order confirming settlement is vacated and case reinstated for further proceedings.

Reversed and remanded.