# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 90

APRIL TERM, A.D. 2014

*July 16, 2014*

ANITA HARMON, as an Individual
and as Personal Representative of the
Estate of EUELLA POTTER, deceased,

Appellant
(Plaintiff),

v.                                                          S-13-0208

STAR VALLEY MEDICAL CENTER,
STAR VALLEY CARE CENTER,
AMY BORT, C.N.A., JULIE COOPER,
R.N., and DR. KITCHNER P. HEAD,

Appellees
(Defendants).

---

*Appeal from the District Court of Lincoln County*
*The Honorable Timothy C. Day, Judge*

*Representing Appellant:*
> W. Keith Goody, Esq., Cougar, Washington; Robert E. Schroth, Sr., of Schroth & Schroth, Jackson, Wyoming. Argument by Mr. Schroth.

*Representing Appellees:*
> W. Henry Combs III and Andrew F. Sears of Murane & Bostwick, LLC, Casper, Wyoming. Argument by Mr. Combs.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\* Chief Justice at time of oral argument*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, **Justice**.

[¶1]    Appellant Anita Harmon, acting as the personal representative for her mother's estate, filed suit against the Star Valley Medical and Care Centers[1] and several of their employees (collectively "Appellees"), claiming that their negligence injured her mother and caused her death.  Before filing the complaint, Ms. Harmon submitted a claim as required by the Wyoming Governmental Claims Act (WGCA), Wyo. Stat. Ann. § 1-39-113 (LexisNexis 2013), the validity of which became the central issue in the case.  The district court granted summary judgment, determining that it did not have subject matter jurisdiction because the claim was neither signed under oath as required by the WGCA nor certified as required by the Wyoming Constitution.

[¶2]    This matter presents one of the first opportunities for the Court to study the most recent amendments to the WGCA, which became effective on July 1, 2010.  Based upon our solicitous review of what is statutorily required for a governmental claim to be valid, we find that the claim in this case was not executed under oath as required by § 1-39-113(e).  However, our examination of the WGCA also compels us to revisit this Court's precedent concerning whether the claim requirements set forth in the WGCA and Wyoming Constitution are jurisdictional, or rather conditions precedent to filing suit that are nonjurisdictional substantive requirements and can be waived.  We conclude that the claim requirements of the statute and constitution are the latter, and we therefore overrule our precedent to the extent that it has characterized the claim requirements to be jurisdictional.

[¶3]    Although the claim did not meet statutory and constitutional requirements, we find that Appellees failed to adequately raise the deficiencies in it as an affirmative defense, and that they therefore waived that defense.  We reverse and remand.

## ISSUES

[¶4]    While the parties present several issues for our review, we find the following dispositive:

1.      Did the claim meet the requirements of Wyo. Stat. Ann. § 1-39-113(e) and Article 16, § 7 of the Wyoming Constitution?

2.      Was the district court deprived of subject matter jurisdiction because the claim did not strictly comply with the WGCA and Wyoming Constitution?

3.      Did Appellees waive their affirmative defense that the claim was not executed as required by the WGCA and Wyoming Constitution?

---

[1] These governmental entities are also known as the North Lincoln County Hospital District.

## FACTS

[¶5]   Ms. Harmon's mother Euella Potter was a resident of Star Valley Care Center. She lived there from March 3, 2008 until her death on July 15, 2010.  On July 9, 2010, Ms. Potter fell while being assisted out of bed.  Approximately eleven hours after the fall, she was taken to the hospital emergency room, where an emergency physician discovered that she had suffered fractures to her femur and hip.  She underwent surgery to repair them two days later.  Unfortunately, she passed away on July 15, 2010, four days after her surgery.[2]

[¶6]   Ms. Harmon presented a governmental claim to the Star Valley Medical and Care Centers on September 12, 2011.  While the claim was signed by Ms. Harmon, it was not executed under oath as required by § 1-39-113(e), which would have also satisfied the requirements of the Wyoming Constitution.  Rather, the claim was signed under penalty of "paying" and was merely "acknowledged" by a notary.

[¶7]   A claim was also presented to the Wyoming Medical Review Panel on November 15, 2011, but Appellees waived their right to review by the panel, which permitted Appellant to file suit.[3]  Ms. Harmon filed a complaint in the district court for Lincoln County on March 26, 2012.  In the complaint, she acknowledged that Star Valley Medical and Care Centers are governmental entities and averred full compliance with the WGCA and Wyoming Constitution.  A copy of the claim was attached.

[¶8]   Appellees answered the complaint, admitting that the Star Valley Medical and Care Centers are governmental entities, and that the remaining Appellees are their employees.  All of the remaining allegations, including Ms. Harmon's allegation that she had fully complied with the WGCA, were generally denied.  Appellees also raised various affirmative defenses, including one indicating that "[t]hese defendants reserve the right to challenge the plaintiff's compliance with the governmental claims act."  At the time Appellees answered, Appellant would have had approximately three months before the two-year limitation period for filing a governmental claim expired during which she could have filed a new claim.  Wyo. Stat. Ann. § 1-39-113(a).

---

[2] Ms. Harmon was appointed personal representative of her mother's estate for the separate probate case. However, she did not seek appointment as personal representative for the purpose of pursuing a wrongful death action in the instant case until Appellees moved for summary judgment.

[3] The Medical Review Panel claim is not in the record, but the Review Panel Act requires that claims submitted to it contain different information than that required by the Governmental Claims Act, and those claims are submitted to a different agency. *Compare* Wyo. Stat. Ann. § 9-2-1519(a)(ii) (LexisNexis 2013) *with* Wyo. Stat. Ann. § 1-39-113(b).

[¶9] After some discovery was conducted, Appellees filed a motion for summary judgment under W.R.C.P. 56 on December 10, 2012, roughly nine months after receiving the complaint. In that motion, they argued specifically for the first time that Ms. Harmon's claim was defective because it was not signed under oath as required by Wyo. Stat. Ann. § 1-39-113(e) or certified under penalty of perjury as required by Article 16, § 7 of the Wyoming Constitution. In response, Ms. Harmon argued that her claim substantially complied with the signature and certification requirements of the WGCA and Wyoming Constitution, and that the use of the word "paying" was just a typographical error that was not fatal to her claim.

[¶10] The district court held a hearing on April 11, 2013, and on July 18, 2013, granted Appellees' motion for summary judgment. It found that the claim was facially invalid because Ms. Harmon failed to sign under oath or penalty of perjury as required by the current WGCA and the Wyoming Constitution. The court concluded, based on our precedent, that "[a]bsent a valid and timely notice of claim, [it] lacks jurisdiction to consider [Ms. Harmon's] claims."

[¶11] Ms. Harmon timely appealed from the order granting summary judgment.

## STANDARD OF REVIEW

[¶12] This appeal requires us to review the summary judgment granted to Appellees. We have often stated that standard of review:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling.

*Lindsey v. Harriet*, 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011) (citations and quotation marks omitted). We can affirm an order granting summary judgment on any

basis appearing in the record. *Magin v. Solitude Homeowner's Inc.*, 2011 WY 102, ¶ 20, 255 P.3d 920, 927 (Wyo. 2011).

[¶13] However, this case also presents a question concerning subject matter jurisdiction and requires us to apply the WGCA and a provision of the Wyoming Constitution. We therefore set forth the standards of review for those issues.

[¶14] "The existence of subject matter jurisdiction is a question of law that we review *de novo*." *Excel Constr., Inc. v. Town of Lovell*, 2011 WY 166, ¶ 12, 268 P.3d 238, 241 (Wyo. 2011) (quoting *Madsen v. Bd. of Trustees of Mem'l Hosp. of Sweetwater Cnty.*, 2011 WY 36, ¶ 9, 248 P.3d 1151, 1153 (Wyo. 2011)). A court's subject matter jurisdiction may be challenged at any time. *N. Laramie Range Found. v. Converse Cnty. Bd. of Cnty. Comm'rs*, 2012 WY 158, ¶ 22, 290 P.3d 1063, 1073 (Wyo. 2012). "If the district court lacked subject matter jurisdiction, this Court has jurisdiction on appeal, not on the merits, but only as to the jurisdictional issue." *Rock v. Lankford*, 2013 WY 61, ¶ 18, 301 P.3d 1075, 1080 (Wyo. 2013) (quoting *Hall v. Park Cnty.*, 2010 WY 124, ¶ 3, 238 P.3d 580, 581 (Wyo. 2010)). "The absence of subject matter jurisdiction makes dismissal, rather than affirmance, the proper course." *Hall*, ¶ 3, 238 P.3d at 581; *see also Wilson v. Town of Alpine*, 2005 WY 57, ¶ 7, 111 P.3d 290, 292 (Wyo. 2005).

[¶15] Statutory construction is also a question of law, and hence the standard of review is also *de novo*. *Powder River Basin Res. Council v. Wyo. Oil and Gas Conservation Comm'n*, 2014 WY 37, ¶ 19, 320 P.3d 222, 228 (Wyo. 2014). In interpreting statutes, this Court must endeavor to find the reasonable intent of the drafters. *Id.* We begin by examining the ordinary and obvious meaning of the words employed according to their arrangement and connection. *Id.* When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and need not invoke our longstanding rules of statutory construction. *Id.*; *see also Int'l Ass'n of Firefighters Local Union No. 279 v. City of Cheyenne*, 2013 WY 157, ¶ 9, 316 P.3d 1162, 1166 (Wyo. 2013) ("A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability.").

[¶16] Likewise, "the district court's interpretation and application of the Wyoming Constitution presents a question of law that is also reviewed *de novo*." *Cantrell v. Sweetwater Cnty. Sch. Dist. No. 2*, 2006 WY 57, ¶ 6, 133 P.3d 983, 985 (Wyo. 2006). In construing constitutional provisions, we follow the same rules that govern the construction of statutes and are guided primarily by the intent of the drafters, looking first to the plain and unambiguous language used to discern that intent. *Id.*

[¶17] Finally, we must determine whether Appellees adequately pled an affirmative defense, which requires us to interpret a Wyoming Rule of Civil Procedure. We also review that issue *de novo*. *Weidt v. State*, 2013 WY 143, ¶ 21, 312 P.3d 1035, 1040 (Wyo. 2013); *Kelly v. Kilts*, 2010 WY 151, ¶ 9, 243 P.3d 947, 950 (Wyo. 2010) (citing

*Busch v. Horton Automatics, Inc.*, 2008 WY 140, ¶ 13, 196 P.3d 787, 790 (Wyo. 2008)); *In re Kite Ranch, LLC v. Powell Family of Yakima, LLC*, 2008 WY 39, ¶ 17, 181 P.3d 920, 925 (Wyo. 2008).

# DISCUSSION

## *Compliance with the claim requirements under the WGCA and Wyoming Constitution*

[¶18] "[T]his Court has long held that a party seeking to bring an action against a governmental entity must first comply with the constitutional and statutory requirements by presenting a notice of claim to the entity." *Brown v. City of Casper*, 2011 WY 35, ¶ 19, 248 P.3d 1136, 1141 (Wyo. 2011). Since statehood, Wyoming's constitution has required governmental claims to have some level of affirmation in order to encourage honesty and avert the filing of false claims. The original text of the constitution mandated that:

> No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county, or political sub-division, shall be audited, allowed or paid until a full itemized statement in writing, **verified by affidavit**, shall be filed with the officer or officers whose duty it may be to audit the same.

Wyo. Const. art. 16, § 7 (Michie 1957) (emphasis added); *see Houtz v. Board of Comm'rs of Uinta Cnty.*, 11 Wyo. 152, 168, 70 P. 840, 842 (Wyo. 1902). Over a hundred years ago, in *Houtz*, we examined this constitutional provision in the context of a governmental claim and found that "it is plain . . . that the requirement for verification has for its object a showing of good faith and honesty in the presentation of the bill, and some evidence of the truth, justness, and correctness of the claim." 11 Wyo. at 168, 70 P. at 842.

[¶19] In 1970, Article 16, § 7 was amended[4] to read as it does today:

---

[4] At the time of the constitutional amendment in 1970, Wyo. Stat. Ann. § 6-154 (Michie 1957) defined the crime of "[f]alse certificate, affidavit or statement" as follows:

> Whoever wilfully, corruptly and falsely before an officer, authorized to administer oaths, under oath or affirmation, voluntarily makes any false certificate, affidavit or statement of any nature, for any purpose, in any matter where an oath is authorized to be taken, or whoever wilfully, corruptly and falsely, voluntarily makes any false certificate or statement of any nature under penalty of perjury, shall be deemed guilty of perjury, and shall be imprisoned in the penitentiary not more than five years.

No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or political subdivision, shall be audited, allowed or paid until a full itemized statement in writing, **certified to under penalty of perjury**, shall be filed with the officer or officers whose duty it may be to audit the same.

Wyo. Const. art. 16, § 7 (emphasis added). In *Cantrell*, we analyzed the differences between the original and amended versions, explaining that:

The old constitutional requirement was to "verify" a claim by "affidavit." To "verify" means to "confirm or substantiate in law by oath or proof." *Webster's Third New International Dictionary of the English Language Unabridged* 2543 (2002). Similarly, *Black's Law Dictionary* 1556 (7th ed. 1999) defines "verify" in our context as "to confirm or substantiate by oath or affidavit, to swear to the truth of." In turn, an "affidavit" is "a sworn statement in writing made esp[ecially] under oath or on affirmation before an authorized magistrate or officer[.]" *Webster's Third New International Dictionary* at 35. And once again, *Black's Law Dictionary* at 58 contains a similar definition: "A voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." By contrast, to "certify" is "to attest esp[ecially] authoritatively or formally[.]" *Webster's Third New International Dictionary* at 367. In legal parlance, to "certify" means to "authenticate or verify in writing . . . [t]o attest as being true or as meeting certain criteria." *Black's Law Dictionary* at 220. On its face, the unambiguous intent of the amended provision was to allow claims against governmental entities to be supported by unsworn certificates, so long as such were made "under penalty of perjury," thus making the declarant subject to a charge of perjury under Wyo. Stat. Ann. § 6-154. That is what the district court concluded in the present case, and to that extent, the district court was correct.

*Cantrell,* ¶ 10, 133 P.3d at 986. We have long held that Article 16, § 7, including the language "certified to under penalty of perjury," applies to claims presented under the WGCA. *See id.*, ¶ 7, 133 P.3d at 985.

[¶20]  In 2010, the legislature amended the WGCA to include the following subsection:

> (e) In any claim filed with a governmental entity under this act, the claim shall be signed by the claimant under **oath** in substantially the following format:
>
> I, _____, have read and understand the provisions of the false swearing statute. I hereby certify under **penalty of false swearing** that the foregoing claim, including all of its attachments, if any, is true and accurate.
>
> _____          _____
> Signature of Claimant                         Date
>
> _____
> Printed Name of Claimant
>
> STATE OF WYOMING           )
>                            ) ss.
> COUNTY OF _____        )
>
> **Subscribed and sworn** to before me, a Notarial Officer, this .... day of ......, .....
>
> _____
> Notarial Officer
>
> My Commission Expires:                    (Seal).

Wyo. Stat. Ann. § 1-39-113(e) (first and third emphasis added).[5]

[¶21]  Thus, before the 2010 amendments to the WGCA, a claim had to only be certified by the claimant under penalty of perjury, thereby satisfying the requirements of the Wyoming Constitution.  The legislature chose to alter the signature and certification requirements in its most recent amendments.  A valid claim must now be signed under **oath,** which can be accomplished by signing under "penalty of false swearing" as set

---

[5] Section (e), along with other important amendments to the WGCA, became effective July 1, 2010.  *See* 2010 Wyo. Sess. Laws Ch. 27.

Interestingly, we also note that the online version of the form provided in section (e), *via* Westlaw and the Wyoming Legislature's website (*see* House Enrolled Act 16 (HB 0066)), shows that "penalty of false swearing" is emphasized in bold.  However, in the LexisNexis paper version of Wyoming's statutes, the emphasis has been omitted, we assume inadvertently.

forth in the form provided in the statute. Because claims are now statutorily required to be signed under oath, the certification requirements of Article 16, § 7 are necessarily satisfied. *See Cantrell*, ¶ 10, 133 P.3d at 986. The legislature harmonized claim requirements under the WGCA with Wyoming's constitution and current statutes.

[¶22] We believe the legislature required a claim to be executed under penalty of false swearing rather than under penalty of perjury for good reason. There is a legitimate question as to whether signing and presenting a false claim would constitute perjury. Under Wyoming's current perjury statutes, a false statement must be made in a "judicial, legislative, or administrative proceeding." On the other hand, the false swearing statute imposes criminal liability for making a false statement under oath or under penalty of false swearing "in a matter where an oath is authorized by law." *Compare* Wyo. Stat. Ann. § 1-2-104 (LexisNexis 2013) (defining "false swearing") *and* Wyo. Stat. Ann. § 6-5-303 (LexisNexis 2013) (false swearing in nonjudicial proceedings) *with* Wyo. Stat. Ann. 6-5-301(a)(LexisNexis 2013) (defining "perjury").[6] If the legislature intended to

---

[6] Wyoming's perjury statute, § 6-5-301, provides as follows:

> A person commits perjury if, while under a lawfully administered oath or affirmation, he knowingly testifies falsely or makes a false affidavit, certificate, declaration, deposition or statement, **in a judicial, legislative or administrative proceeding in which an oath or affirmation may be required by law**, touching a matter material to a point in question.

(Emphasis added).

Wyo. Stat. Ann. § 6-5-303(c), the false swearing statute, provides as follows:

> A person who knowingly makes a false certification under W.S. 1-2-104 is guilty of a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both.

Wyo. Stat. Ann. § 1-2-104 is as follows:

> (a) A matter required or authorized to be supported, evidenced, established or proven by the sworn statement, declaration, verification, certificate, oath or affidavit, in writing of the person making it, other than a deposition, an acknowledgment, an oath of office or an oath required to be taken before a specified official other than a notary public, may be supported, evidenced, established or proven by the person certifying in writing "under penalty of false swearing" that the matter is true. The certification shall state the date and place of execution and the following:
>
> "I certify under penalty of false swearing that the foregoing is true".

8

require a claimant to subject himself or herself to potential criminal liability for a false claim, presumably to encourage honesty through fear of criminal prosecution, a declaration under penalty of perjury might not accomplish that objective.[7]

[¶23] We turn now to the question of whether the claim submitted by Appellant complies with the amended statute. Mrs. Potter was injured and Ms. Harmon executed and presented her claim after the WGCA was amended to include the specific and unambiguous statutory claim form. Instead of tracking the form provided in § 1-39-113(e), the claim states that "I, Anita Harmon do hereby declare under penalty of paying according to the laws of the State of Wyoming that the foregoing is true and correct to the best of my knowledge," and it is "acknowledged" by a notarial officer.

[¶24] Ms. Harmon argues that the term "paying" is just a typographical error, and therefore she substantially complied with the requirements of the WGCA. We do not find it necessary to conduct a semantic analysis of the possible ways one could intend to use one word and somehow use another in the modern age of computers and automatic spelling correction. Our analysis *supra* confirms that even if "paying" could be considered a typo of "perjury," it does not matter because a certification under penalty of perjury does not meet the requirements of the WGCA that a claim be executed by the claimant under **oath** by signing subject to penalty of false swearing. Simply put, it is patently clear that Ms. Harmon's claim was not signed under oath, and therefore does not satisfy the requirements of § 1-39-113(e).

[¶25] Aside from not being signed under penalty of false swearing, the other obvious flaw with Ms. Harmon's assertion is that the claim was "**acknowledged** before me [the notary] by Anita Harmon." (Emphasis added). The Wyoming Uniform Law on Notarial Acts provides the following definitions:

---

(b) A person who knowingly makes a false certification under subsection (a) of this section is guilty of false swearing in violation of W.S. 6-5-303(c).

[7] This Court is, and has been, cognizant of the difference between false swearing and perjury. We long ago explained:

Although the term, false swearing, is used interchangeably with perjury, there is a definite distinction, both at common law and under usual statutory schemes. The principal distinguishing factor is that perjury is committed only in a judicial proceeding whereas false swearing is not necessarily committed in a judicial proceeding but is rather the giving of false statement under oath.

*Nimmo v. State*, 603 P.2d 386, 388 (Wyo. 1979).

- *Acknowledgment*: "[A] declaration by a person that the person has freely and voluntarily executed an instrument for the purposes stated therein and, if the instrument is executed in a representative capacity, that the person signed the instrument with proper authority and executed it as the act of the person or entity represented and identified therein and that the person acknowledges that the instrument was executed and acknowledged freely and voluntarily." Wyo. Stat. Ann. § 34-26-101(b)(i) (LexisNexis 2013).

- *Affirmation*: "[A] notarial act, or part thereof, which is legally equivalent to an oath and in which an individual at a single time and place: (A) [i]s personally known to the notarial officer or identified by the notarial officer through satisfactory evidence; and (B) [m]akes a vow of truthfulness or fidelity on penalty of perjury, based on personal honor and without invoking a deity or using any form of the word 'swear'." Wyo. Stat. Ann. § 34-26-101(b)(vii).

- *Oath*: "[A] notarial act, or part thereof, which is legally equivalent to an affirmation and in which an individual at a single time and place: (A) [i]s personally known to the notarial officer or identified by the notarial officer through satisfactory evidence; and (B) [m]akes a vow of truthfulness or fidelity on penalty of perjury while invoking a deity or using any form of the word 'swear'." Wyo. Stat. Ann. § 34-26-101(b)(xiv).

- *Verification upon oath or affirmation*: "[A] declaration that a statement is true made by a person upon oath or affirmation." Wyo. Stat. Ann. § 34-26-101(b)(v). When a notary invokes the term "signed and sworn to (or affirmed)" it is legally sufficient to create a verification upon oath or affirmation. Wyo. Stat. Ann. § 34-26-108(a)(iii).

[¶26] The statute governing notarization makes clear that while an oath or affirmation requires the party to "make a vow of truthfulness or fidelity on penalty of perjury," there is no such requirement for an acknowledgment, because a signer must only acknowledge that the document was signed freely and voluntarily. This is undoubtedly the reason that the form in the WGCA requires the specific words "subscribed and sworn" to be contained in the notarized portion of the claim—to ensure that the declarant is subject to liability under the false swearing statute in order to encourage honesty. *See* Wyo. Stat. Ann. § 1-39-113(e).

[¶27] In *Cantrell v. Sweetwater*, we were confronted with the issue of whether an affidavit signed under oath by the claimants satisfied the requirement of Article 16, § 7 of the Wyoming Constitution that claims against governmental entities be "certified to under penalty of perjury." 2006 WY 57, ¶ 3, 133 P.3d at 984. There, the claimants presented a signed claim in which the notary stated "sworn by me upon his oath, says that the facts alleged in the foregoing instrument are true." *Id.*, ¶ 5, 133 P.3d at 985.

10

However, the claim did not include the phrase that the claimants had signed "under penalty of perjury." *Id.*, ¶¶ 4-5, 133 P.3d at 984-85. We held that the claim complied with the requirements of Article 16, § 7 even though it did not contain the phrase the provision called for. We reasoned that "[i]f it is acceptable to *state* that the facts supporting a claim are true, it certainly must be acceptable to *swear* that those facts are true." *Id*, ¶ 11, 133 P.3d at 987 (emphasis in original). Therefore, we concluded:

> This is not a situation where something "almost as good" was substituted for actual compliance, and we are not, therefore, finding substantial compliance sufficient. Rather, we are stating that compliance exceeding the constitutional language sufficed. The district court had jurisdiction over the governmental claim in this matter.

*Id*., ¶ 12, 133 P.3d at 987.

[¶28] To the extent it applies after § 1-39-113(e) was enacted, *Cantrell* is readily distinguishable. Ms. Harmon did not sign her claim after being administered an oath or affirmation to the truth of its contents, which might have brought her within the scope of Wyoming's false swearing statute if her claim contained false statements. A claim is not valid unless it does so.

### *Subject Matter Jurisdiction*

[¶29] The district court concluded that the claim was defective, and that it therefore had no subject matter jurisdiction. Our precedent up to this point supports that result, but we are obliged to revisit the rulings which compelled the district judge to rule as he did.

[¶30] In *Brown*, we explained that "[w]hile there is no question that presentation of a notice of claim is constitutionally and statutorily required before an action can be brought against a government entity . . . subject matter jurisdiction is invoked upon the filing of a complaint alleging a claim against a governmental entity." *Brown*, ¶ 9, 248 P.3d at 1139. As a result, we overruled our prior decisions holding that a district court lacks subject matter jurisdiction over a WGCA claim if the complaint fails to allege compliance with applicable statutory and constitutional requirements. *Id.*

[¶31] Today we take another step in our WGCA jurisprudence, and we conclude that the claim requirements of § 1-39-113 of the WGCA and Article 16, § 7 of the Wyoming Constitution, although substantive, are not jurisdictional, and that they therefore can be waived. Accordingly, we overrule *Beaulieu v. Florquist*, 2004 WY 31, ¶ 9, 86 P.3d 863, 866 (Wyo. 2004) (*Beaulieu II*); *Bell v. Schell*, 2004 WY 153, ¶ 34, 101 P.3d 465, 475 (Wyo. 2004); and *Wooster v. Carbon County School Dist. No. 1*, 2005 WY 47, ¶ 6, 109 P.3d 893, 895 (Wyo. 2005), and their progeny, to the extent that these cases characterize

11

the notice requirements set out in § 1-39-113 of the WGCA and Article 16, § 7 of the Wyoming Constitution, as jurisdictional.[8]

[¶32] The WGCA was adopted in 1979 to address "the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity," which until then prevailed in Wyoming. Wyo. Stat. Ann. § 1-39-102. It has always provided that "[n]o action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error, or omission . . . ." Wyo. Stat. Ann. § 1-39-113(a).

[¶33] In a 1990 case, this Court held that failure to certify a claim under penalty of perjury as required by the Wyoming Constitution did not deprive the district court of jurisdiction as argued by the State of Wyoming, which was a party to the case:

> In the last issue asserted in its appeal, the State contends that the trial court did not have jurisdiction to proceed because Fleetwood failed to comply with Wyo. Const. art. 16, § 7. This constitutional provision requires, *inter alia*, that any claim against the State be "certified to under penalty of perjury." Wyo. Const. art. 16, § 7. Specifically, the State asserts that Mr. and Mrs. Martinez, acting on behalf of Fleetwood, failed to make the certification under penalty of perjury when they first presented their claim and that, since proper filing of a claim is a condition precedent to suit, their claim cannot be brought because it was not properly filed. *Wyoming State Highway Department v. Napolitano*, 578 P.2d 1342 (1978); *Awe v. University of Wyoming*, 534 P.2d 97 (1975); *Utah Construction Company v. State Highway Commission*, 45 Wyo. 403, 19 P.2d 951 (1933).
>
> This particular contention by the State is raised for the first time in this appeal. The point was never argued to the district court. The State agrees that this is true, but it contends that an omission of the correct certification results in a failure of subject matter jurisdiction, and the issue can be raised at any time in the proceeding. We do not agree with this contention. The failure to verify or certify as the

---

[8] We are very mindful that "[o]verruling prior case law is an act this Court approaches with caution." *Brown*, ¶ 43, 248 P.3d at 1146. But this Court must "be willing to depart from precedent when it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Id.* (quotation marks omitted).

> constitution now reads is nothing more than a defect or an irregularity that is not jurisdictional. *In re Bear River Irrigation District*, 51 Wyo. 343, 65 P.2d 686 (1937). The effect of that decision is that this alleged defect is not jurisdictional and, for that reason, the defense cannot be raised for the first time on appeal. *Matter of Estate of McCue*, 776 P.2d 742 (Wyo.1989); *Ricci v. New Hampshire Insurance Company*, 721 P.2d 1081 (Wyo.1986); *Dennis v. Dennis*, 675 P.2d 265 (Wyo.1984); *Nickelson v. People*, 607 P.2d 904 (Wyo.1980); *Scherling v. Kilgore*, 599 P.2d 1352 (Wyo.1979). We apply our well-established rule concerning those issues raised for the first time on appeal, and we reject this contention by the State.

*Martinez v. City of Cheyenne*, 791 P.2d 949, 958 (Wyo. 1990), *overruled by Beaulieu II*, ¶ 13, 86 P.3d at 868. This decision required the failure to properly certify governmental claims to be timely raised, and it held that the defense was waived if not. At least in cases in which time remained to file a new claim, this ruling assured that claimants were put on notice of certification defects and could file new claims.

[¶34] This state of affairs changed as the result of two appeals involving the same parties. *Beaulieu v. Florquist,* 2001 WY 33, 20 P.3d 521 (Wyo. 2001) *(Beaulieu I); Beaulieu II,* 2004 WY 31, 86 P.3d 863. In *Beaulieu I*, a mysterious unsigned document styled as a governmental claim appeared at the offices of the City of Rawlins about a week after the accident on which the claim was based. Beaulieu retained counsel, who filed another claim, and eventually a lawsuit. The trial court granted summary judgment because the lawsuit was not filed within one year of the mystery claim as required by Wyo. Stat. Ann. § 1-39-114. *Beaulieu I,* ¶ 7, 20 P.3d at 525.

[¶35] This Court reversed, holding that claims against a governmental entity had to be certified under penalty of perjury in compliance with Wyoming Constitution Article 16, § 7, meaning that they have to be signed, which the mystery claim was not. Therefore it concluded that the claim did not trigger the one-year statute of limitations. *Id*., ¶ 17, 20 P.3d at 527.

[¶36] This decision proved to be the Beaulieus' undoing, because on remand, the City moved again for summary judgment because the claim filed by their attorney was signed only by him, and not under penalty of perjury. The district judge dismissed the case, finding that the defective claim deprived the court of subject matter jurisdiction. *Beaulieu II*, ¶ 7, 86 P.3d at 866.

[¶37] This Court agreed. It overruled *Martinez*, and went even further to hold that a complaint seeking relief under the Governmental Claims Act must also plead compliance

with the certification and signature requirements of the state constitution, and that failure to plead compliance deprived district courts of subject matter jurisdiction. *Id.*, ¶¶ 13-14; 86 P.3d at 868. This led to a number of decisions dismissing cases for failure to either present a properly executed claim or to allege having done so in the complaint. *See Brown*, ¶¶ 34-44, 248 P.3d at 1144-47.[9]

[¶38] Because the filing of a properly executed claim was now required to confer subject matter jurisdiction, parties began to engage in what might fairly be described as gamesmanship when time remained during which a proper claim could be filed. In *Lavatai v. State*, 2005 WY 133, 121 P.3d 121 (Wyo. 2005), the plaintiff failed to sign the claim under penalty of perjury. The State's answer denied "the validity of said claim" and that "said claim complied with Wyoming law," and asserted that the court lacked subject matter jurisdiction. *Id.*, ¶ 3, 121 P.3d at 122-23. Lavatai's attorney served interrogatories which should have resulted in disclosure of the flaws in his claim. The defendants did not answer the interrogatories, or provided what can best be described as evasive responses. *Id.*, ¶¶ 3-4, 121 P.3d at 123. On the date the two-year period during which Lavatai could have filed a proper claim ended, the State filed a motion for summary judgment, which was eventually granted. *Id.,* ¶ 5, 121 P.3d at 123. This Court affirmed, holding that counsel for Appellees had no duty to point out the flaw in the claim. *Id.*, ¶¶ 12-13, 121 P.3d at 125.

[¶39] However, Justice Kite wrote a spirited concurrence expressing grave concerns:

> I feel compelled, however, to comment about the State's tactics in this case. The State had numerous opportunities to alert Mr. Lavatai to the problem with his governmental claim, including: in the State risk manager's initial response; in its answer to his civil complaint; and in its responses to his specific interrogatories. In what appears to be a calculated effort to delay Mr. Lavatai's recognition of his

---

[9] *See, e.g.*, *Wilson v. Town of Alpine*, 2005 WY 57, 111 P.3d 290 (Wyo. 2005) (dismissing appeal for lack of subject matter jurisdiction because the claim did not meet the requirements of the constitution—it was neither signed by the claimants nor certified to under penalty of perjury); *Lavatai v. State*, 2005 WY 133, 121 P.3d 121 (Wyo. 2005) (claimant failed to sign the claim and certify it under penalty of perjury as required by the WGCA and constitution); *Jauregui v. Mem'l Hosp. of Sweetwater Cnty.*, 2005 WY 59, ¶ 7, 111 P.3d 914, 916 (Wyo. 2005) (finding in part that the claim was not certified to under penalty of perjury as required by the constitution and therefore the district court correctly dismissed the cause of action); *Wooster*, ¶ 6, 109 P.3d at 895-96 (reaffirming that § 1-39-113 is a nonclaim statute, meaning that a defective notice of claim cannot be cured via the relation back doctrine after the two year period has passed); *Bell,* ¶ 34, 101 P.3d at 468 (the right to sue ceases to exist when the time period expires and no proper notice has been presented and cannot be resurrected by the later presentation of a valid notice of claim); *Yoak v. Ide*, 2004 WY 32, 86 P.3d 872 (Wyo. 2004) (claim was constitutionally void for lack of certification under penalty of perjury, reaffirming that a claim that does not meet the constitutional signature and certification requirements is not a valid claim under the act).

14

technical error until after it was too late to correct it, the State obscured its position on the validity of his governmental claim. Granted, Mr. Lavatai does not direct us to authority showing the State's risk manager had an affirmative obligation to alert him about the error when she responded, in the first instance, to his governmental claim. Similarly, the question of whether the State's answer to his complaint, together with the affirmative defense alleging the district court lacked subject matter jurisdiction, was sufficiently definite is, perhaps, open to argument. *See e.g., Harris v. Grizzle*, 599 P.2d 580, 583 (Wyo. 1979); *Romero v. Schulze*, 974 P.2d 959, 964 (Wyo. 1999).

. . .

In response to Mr. Lavatai's equitable estoppel arguments, the State claims it had no duty to provide legal advice to an opponent and, absent an affirmative misrepresentation or concealment of facts of which it had superior knowledge, it did nothing wrong. It is true that the State was not obligated to provide legal advice to Mr. Lavatai, but it did have a legal duty to respond to his discovery requests. Mr. Lavatai requested the facts, witnesses, and writings in support of the State's affirmative defense. Clearly, Mr. Lavatai's failure to personally sign his governmental claim under penalty of perjury was a fact which supported the State's affirmative defense that the district court did not have subject matter jurisdiction over the matter. W.R.C.P. 33 obligated the State to answer Mr. Lavatai's interrogatory within 30 days and Rule 3.4 of the Wyoming Rules of Professional Conduct placed the responsibility upon the State's attorneys to "make reasonably diligent effort to comply with a legally proper discovery request by an opposing party[.]" The State did not, in good faith, comply with its discovery obligations.

The record is replete with evidence showing that the State willfully withheld the information about its defense from Mr. Lavatai, in hopes that the two-year period under the Governmental Claims Act would expire before he realized his mistake. The State did not respond to his interrogatories in accordance with the rules of civil procedure, and, when it did respond on behalf of the snowplow operator defendant, it did

15

so in a consciously oblique manner. The State's actions, which included conducting discovery, served the purpose of lulling Mr. Lavatai into believing there was no statute of limitations problem. This implication was strengthened at a scheduling conference in January 2003, when the State indicated that it would file a dispositive motion but did not specify that the basis for the motion would be a lack of jurisdiction or expiration of the statute of limitations. Then, immediately after the two year period ran out, the State filed its summary judgment motion challenging the district court's subject matter jurisdiction. Obviously, the State deliberately intended to delay Mr. Lavatai's discovery of the defect in his claim in order to allow the statute of limitations to expire.

This conduct resulted in a "win" for the State, but at what cost? Of course, an attorney for the State, like any attorney, has the duty to zealously represent his client. See e.g., *Brooks v. Zebre*, 792 P.2d 196, 200-01 (Wyo. 1990). The language we used in *Kath v. Western Media, Inc.*, 684 P.2d 98, 100-01 (Wyo. 1984), quoting *Virzi v. Grand Trunk Warehouse and Cold Storage Co.*, 571 F.Supp. 507, 512 (E.D.Mich.1983) is instructive on how an attorney should balance these obligations:

> " * * * Opposing counsel does not have to deal with his adversary as he would deal in the marketplace. Standards of ethics require greater honesty, greater candor, and greater disclosure, even though it might not be in the interest of the client or his estate.

> The handling of a lawsuit and its progress is not a game. There is an absolute duty of candor and fairness on the part of counsel to both the Court and opposing counsel. At the same time, counsel has a duty to zealously represent his client's interests. That zealous representation of interest, however, does not justify a withholding of essential information. * * *

> * * * [T]he profession should embrace an affirmative ethical standard for attorneys' professional relationships with courts, other lawyers and the public: The lawyer must act honestly and in good faith. Another lawyer * * * * who deals with a lawyer should

16

not need to exercise the same degree of caution that he would if trading for reputedly antique copper jugs in an oriental bazaar. It is inherent in the concept of an ethic, as a principle of good conduct, that it is morally binding on the conscience of the professional, and not merely a rule of the game adopted because other players observe (or fail to adopt) the same rule. Good conduct exacts more than mere convenience. * * * *

* * * * Candor is not inconsistent with striking a deal on terms favorable to the client, for it is known to all that, at least within limits, that is the purpose to be served. * * * * The distinction between honesty and good faith need not be finely drawn here; all lawyers know that good faith requires conduct beyond simple honesty."

*Kath*, 684 P.2d at 100-02 (quoting J. Rubin, A Causerie on Lawyer's Ethics in Negotiations, 35 La.L.Rev. 577, 589-90 (1975)). I do not believe the State's actions in this case demonstrate the high standard of candor, honesty, and good faith required by our rules of civil procedure, rules of professional conduct, and precedent.

*Lavatai*, ¶¶ 14-20, 121 P.3d at 125-27.

[¶40] A similar controversy led to the 2011 decision in *Brown v. City of Casper*. Decades earlier, in *Board of Trustees of the University of Wyoming v. Bell*, the claimant obtained a default judgment against the University and an employee thereof. 662 P.2d 410 (Wyo. 1983), *overruled by Brown*, 2011 WY 35, 248 P.3d 1136. Her complaint did not allege the filing of a governmental claim. The Court found, examining the issue *sua sponte*, that "in the absence of an allegation of the filing of such a claim the district court did not have jurisdiction over the subject matter of the action in accordance with the decisions which this court has promulgated." *Bell,* 662 P.2d. at 414. This decision was reinforced by *Beaulieu II.*

[¶41] Some district courts held that a complaint not alleging compliance with the statute could not be salvaged by an amendment which would relate back to the date of filing, and that they therefore lacked subject matter jurisdiction. *Brown*, ¶ 7, 248 P.3d at 1139. This led the Court to reexamine subject matter jurisdiction under the WGCA in *Brown*.

[¶42] The Court explored decisions preceding the WGCA, which it interpreted to hold that "a district court's jurisdiction does not depend upon the allegations in the pleading;

rather it depends upon whether the court's authority extends over the general class to which the case belongs." *Id.*, ¶ 12, 248 P.3d at 1140 (citing *State v. Kusel*, 29 Wyo. 287, 297, 213 P. 367, 369 (1923); *see also State ex rel Yohe v. District Court of Eighth Judicial District*, 33 Wyo. 281, 286, 238 P. 545, 547 (Wyo. 1925); *Houtz*, 11 Wyo. at 168, 70 P. at 842. It pointed out that the Wyoming Constitution provides district courts with broad jurisdiction, citing Article 5, §§1 and 10, and that the WGCA, § 1-39-117, grants them "original and exclusive jurisdiction for any claim under this act . . . ." *Brown,* ¶¶ 11-12, 18, 248 P.3d at 1140-41. Specifically, *Brown* determined:

> [T]he district court obtained subject matter jurisdiction of this action … when Mr. Brown filed his complaint alleging that he had complied with the requirements of the WGCA by presenting a notice of claim pursuant to § 1-39-113 to the City. Jurisdiction having been invoked by the filing of a complaint alleging a cause of action against a governmental entity, and thus a case within the general class over which the court's authority extends, the district court had the power to hear and decide the case and enter judgment.

*Id.*, ¶ 45, 248 P.3d at 1147 (footnote omitted).

[¶43] This Court ultimately concluded that *Bell* and its progeny were wrongly decided to the extent that they found the filing of a complaint alleging compliance with WGCA jurisdictional, overruled those cases, and reversed the district court, allowing the appellant to amend his complaint to allege compliance. *Brown*, ¶ 44, 248 P.3d at 1146-47. *Brown* is important for what it says about the nature of the claim requirement and the tension between pre- and post-*Bell* cases:

> In governmental claims cases prior to *Bell*, this Court had held that **presentation of a notice of claim was a condition precedent to suing a governmental entity**. **The Court had not said presentation of a notice of claim was necessary to invoke district court jurisdiction** nor had it said a complaint must allege presentation of a claim. **In fact, the Court had consistently exercised jurisdiction in the face of complaints that did not allege compliance and in cases where it was alleged the notice of claim was inadequate, and dismissed complaints only when it determined a proper notice of claim in fact had not been presented**. Neither *Bell* nor any of its progeny overruled those pre-*Bell* cases. The dichotomy between these two lines of cases must be resolved.

*Id.*, ¶ 42, 248 P.3d at 1146 (emphasis added).

[¶44]   We now reexamine those cases finding that a failure to comply with constitutional and statutory claim requirements deprives district courts of jurisdiction to dispose of them on the merits.  We note that the Court held in *Brown* that "the new provision [§1-39-113(e)] does not address the district courts [sic] jurisdiction for claims under the WGCA. . . ."  *Brown*, ¶ 46 n.4, 248 P.3d at 1147 n.4.

[¶45]   If the statements in *Brown* are taken to their logical conclusion, it is clear that *Beaulieu II, Schell, Wooster* and their progeny were incorrectly decided to the extent they held that the claim requirements set out in § 1-39-113 of the WGCA and Article 16, § 7 of the Wyoming Constitution are jurisdictional.   In this case, although we are not sympathetic with Appellant's failure to simply execute the claim as required by the statute and constitution, that noncompliance does not rise to the level of a jurisdictional defect.   Accordingly, we find our holding in *Martinez* to be correct; that is, a defect in a claim is treated as "nothing more than a defect or an irregularity that is not jurisdictional" and find that the failure to execute the claim as required does not deprive the district court of subject matter jurisdiction.   *Martinez*, 791 P.2d at 958 (citing *In re Bear River Irrigation District*, 51 Wyo. 343, 65 P.2d 686 (1937)); *see also Stuart v. Univ. of Mississippi Med. Ctr.*, 21 So. 3d 544, 550 (Miss. 2009) ("The notice requirements in the [Tort Claims Act] are not jurisdictional, and we now hold them to be nonjurisdictional and, therefore, waivable."); *Weeder v. Cent. Cmty. Coll.*, 691 N.W.2d 508, 513 (Neb. 2005) ("This court has held that the filing of a tort claim, rather than being jurisdictional in nature, is a condition precedent to instituting a suit against a political subdivision."); *Keller v. Tavarone*, 628 N.W.2d 222, 230 (Neb. 2001) ("While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the ... Act.").

[¶46]   As the Court observed in *Brown*, § 1-39-117 of the WGCA, Article 5, §§1 and 10 of the Wyoming Constitution, and accepted principles relating to jurisdiction, a district court's "subject matter jurisdiction is invoked with the filing of a complaint stating a case belonging to a general class over which the authority of the court extends." *Brown*, ¶ 44, 248 P.3d at 1146.  Thus, district courts have subject matter jurisdiction to hear and decide actions brought against governmental entities, whether or not the claim is defective. Presentation of a claim is a condition precedent to suing a governmental entity, but it is not necessary to invoke district court jurisdiction.

[¶47]   Our analysis is also bolstered by the language of the WGCA itself.  The Wyoming Legislature had the New Mexico Tort Claims Act available to it when it adopted the WGCA, and many provisions of the Wyoming act are similar to those contained in the New Mexico act.  *DiFelici v. City of Lander*, 2013 WY 141, ¶ 19, 312 P.3d 816, 822 (Wyo. 2013).  The New Mexico act specifically provides that filing a governmental claim is jurisdictional (although it also expressly provides that actual notice of a claim may

confer jurisdiction).[10]  We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of the law when it enacts a statute.  *Id.*, ¶ 31, 312 P.3d at 824.   It chose to omit language characterizing the filing of a claim as jurisdictional, even when the act was amended to specify a specific claim form in 2010.[11]

[¶48]  In a similar vein, federal courts, which have limited jurisdiction, have held that a statutory requirement is jurisdictional only where there is "'clear' indication that Congress wanted the requirement to be 'jurisdictional.'" *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1203, 179 L. Ed. 2d 159 (2011); *U.S.E.E.O.C v. Farmers Insurance Co.*, --F.Supp.2d--, 2014 WL 2465891, *5 (D. E.D. Cal. 2014).   Contrary to our previous rulings, we are unable to find any such clear intention in the historical background or in the language employed in the WGCA.  We must therefore conclude that the legislature did not intend to make a technically perfect claim a prerequisite to subject matter jurisdiction, but rather a condition precedent to filing a lawsuit against a governmental entity.

*Waiver*

[¶49]  By ruling that failure to file a claim strictly complying with the WGCA does not deprive the district court of subject matter jurisdiction, we do not suggest that failure to do so would not require dismissal.   The important distinction is that the absence of subject matter jurisdiction can be raised at any time, even on appeal, while failure to satisfy a condition precedent must be promptly raised as an affirmative defense or waived.  *See N. Laramie Range Found.*, ¶ 22, 290 P.3d at 1073.   When Appellees answered the complaint, they raised as an affirmative defense that "[t]hese defendants reserve the right to challenge the plaintiff's compliance with the governmental claims act."

---

[10] N.M. Stat. Ann. § 41-4-16(B) provides as follows:

> No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and **no court shall have jurisdiction** to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence. The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice by reason of injury.

N.M. Stat. Ann. § 41-4-16 (West) (emphasis added).

[11] Although the legislature chose to codify other WGCA decisions, including the requirement that a claim comply with Article 16, § 7, it did not conform the statute to our decisions regarding subject matter jurisdiction.

[¶50]   Appellant's counsel also contended at oral argument that Appellees improperly objected to and did not answer interrogatories requesting that they identify any deficiencies in the claim while Ms. Harmon could still have corrected them.  However, none of that discovery is in the record.  Thus, while Appellees' efforts to avoid identifying the deficiencies in the claim and to run the clock out on Ms. Harmon may resemble those employed in *Lavatai*, we are only able to consider the adequacy of the affirmative defense, which is a matter of record.

[¶51]   Because the presentation of a notice of claim is a condition precedent to suing a governmental entity and is not jurisdictional, an assertion that a plaintiff did not comply with the WGCA and Wyoming Constitution is an affirmative defense subject to waiver. *See Stuart*, 21 So. 3d. at 550; *see also Ponce v. Parker Fire Dist.*, 322 P.3d 197, 200 (Ariz. Ct. App. 2014).  Wyoming Rule of Civil Procedure 9(c) controls:

> *Conditions precedent.* – In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. **A denial of performance or occurrence shall be made specifically and with particularity.**

W.R.C.P. 9(c) (emphasis added)*; see Brown,* ¶ 54, 248 P.3d at 1149 (Golden J., concurring) ("If the defendant governmental entity believes that the plaintiff has failed to perform the condition precedent . . . then W.R.C.P. 9(c) requires that defendant to make the denial of performance of that condition precedent 'specifically and with particularity.'  Presented with that denial, the district court is then able to make any necessary findings of fact on that issue.").

[¶52]   Appellees' affirmative defense plainly does not satisfy this requirement.  Because it does not comply with Rule (9)(c), Appellees waived their objection to Ms. Harmon's noncompliance with § 1-39-113 of the WGCA and Article 16, § 7 of the Wyoming Constitution.[12]

## CONCLUSION

[¶53]   The requirement of the WGCA that governmental claims be signed under oath was not satisfied in this case.  We conclude, however, that because the claim requirements of

---

[12] Leave to amend pleadings is to be "freely given when justice so requires."  W.R.C.P. 15(a).  Decisions as to whether to permit amendment are entrusted to the discretion of the trial court, and they will not be reversed absent an abuse of that discretion. *Estate of Marusich v. State ex rel. Dept. of Health, Office of Healthcare Financing/Equalitycare*, 2013 WY 150, ¶ 33, 313 P.3d 1272, 1282 (Wyo. 2013).  It is difficult to imagine a circumstance in which it would be appropriate to allow a defendant to amend an answer or otherwise raise a defense of failing to properly execute a governmental claim when time remained for the filing of a proper claim and the defendant simply waited for it to run out.

the WGCA and Wyoming Constitution are substantive but not jurisdictional, a defense based upon deficiencies in a claim can be waived. We find that Appellees failed to properly plead an affirmative defense that the claim was defective and therefore waived that defense.

[¶54] While Appellant may see her day in court even though the claim is defective, we take this opportunity to again highlight that Wyo. Stat. Ann. § 1-39-113(e) contains a simple form which satisfies the signature and certification requirements of the WGCA and Wyoming Constitution. Although the statute provides that the "claim shall be signed by the claimant under oath in substantially the following format," *id.*, the better practice would be to use the wording the legislature supplied to ensure the claim is signed under oath. *See supra*, ¶ 20. In other words, the prudent course of action will be to complete and execute the claim as the legislature directed.

[¶55] We reverse and remand for further proceedings consistent with this opinion.